act. You may proceed. You may please the court. My name is Ray sheets from Cedar Rapids, Iowa. I did accept the appointments. I did not represent this defendant at trial. However, if I did, this case deals with substantial evidence involving an identification from an eyewitness. This eyewitness told the jury that he was driving south. His wife was driving. He was a passenger in the car. He looked out his window and he could clearly see Mr. Heard clearly. He saw the hard look in his eyes and the lighting was perfect. That's what he testified to. Now, does the sun set in the west or the east? So if he's driving south, that means he's looking to the west, right? This accident happened at 720 p.m. in July. His testimony at page 136 of the trial. Question. What was your visibility at this time of day at that time of year? Answer. It was around 720 in the middle of summer. It's bright out. We were heading south, so the sun was on our east. So I was looking out the window to the west, so it was very clear. I mean, it was very, you couldn't ask for better light, really. So he's contrary to what the government says in its brief that this witness had the perfect opportunity to see this incident. He was looking directly to the west, into the sun. Well, you don't have a sufficiency of the evidence claim, right? We do. You do? We do. But it goes more to the importance. It goes to the court has to consider where an eyewitness instruction is not given, then is there other evidence that supports besides that identification? So in this case, we clearly have a witness whose observation would have been in the west, in Cedar Rapids, Iowa, just like it does everywhere. From 1976, this court has been very, very clear. In United States v. Dodge, quote, we will view with grave concern the failure to give specific and detailed instructions on identification in future cases where identification of the defendant is based solely or substantially on eyewitness testimony. Well, how much other evidence was there besides eyewitness? Very little. We have two things that the government cites in its brief. The first thing is the gun was registered to the cousin of the defendant. Well, that's pretty important. Yeah. Maybe. But you look at the defendant's testimony or the cousin's I addressed this in my reply brief, which I left on the table. But the witness, the cousin says he was a music maker. Lots of people were coming in and out of my house. I have a very large family. I have 25 cousins. We don't really know what that means, cousins. I never showed this gun to my cousin. He knew nothing about it. I had it hidden in a box. So that's the other strong piece. Wasn't there an occasion identified where Heard had used the basement, the cousin's basement where the box was? Heard had been down there. He may have been at the residence, but... I think there was evidence that he had been down there, maybe making music or doing something between the time the cousin got the gun and the time of this incident. On page nine of my reply brief, I list set forth the things that the cousin said, and his brief was fairly short. He filed a brief? I'm sorry, my brief in terms of the 25 cousins including the defendant. Davis testified that, quote, a lot of people had access to the basement because Davis would be making music in the basement. Davis testified that he never told the defendant he owned or possessed a firearm. Davis testified to that his knowledge the defendant had never seen the firearm. Davis testified that the defendant was never in the basement of the residence without Davis present. Davis testified that the defendant never lived at the residence. So we have this eyewitness testimony, and then the only real other piece of evidence that the government has is this testimony of the cousin. The cousin or the... Courtney Davis is the cousin of the defendant who the gun was registered to. What about Clark? Ivan Clark is a cooperating witness for the government. Right. He testified that he was shown a picture of the gun that was recovered from the scene. Have you ever seen this weapon? Yeah, the defendant tried to sell it to me. When? Oh, that occurred in August of September. Well, when did this incident happen and the police seized the weapon? It was in July. So the informant or the cooperating person who was trying to work off time said something that never happened. Oh, I see. He sold him a different gun. No. Well, he sold him a different gun, allegedly, but the gun that was that issue that was seized in this case, the government showed him, said, yeah, I know that gun. How do you know that gun? Because the defendant tried to sell it to me in August or September. Well, that would have been one or two months after it had been seized by the police. So we have all this and we have the defense requesting the uniform instruction from the Eighth Circuit regarding eyewitness identification. Wait, wasn't there also some testimony from the mother of the girlfriend about finances that might have corroborated the idea that Herd was a drug dealer? Well, the mom testified that she loaned him ten thousand three hundred dollars because he was in financial trouble. And it looked like somebody beat him up because he didn't pay. Okay, what does that show? Well, it could show circumstantially that it was not a legitimate. So that's the government's evidence. That's the government's evidence, rather than this passerby who is driving in the car. So since 1976, the court has said that they will view with grave concern. The court said, quote, we remain deeply concerned with the inherent fallibility of eyewitness identification and the great injustice that can arise from identification. After that, in United States v. Green, the Eighth Circuit reversed the defendant's conviction where no eyewitness instruction was given. In that case, the defendant was charged with making false statements about being out of the district. He had gone to Los Angeles, was the claim, while he was on pretrial release. And the government's corroborating evidence in that case was the court reporter who worked for the federal judge who transcribed the detention hearing, who was sitting next or in front of this defendant for 90 minutes, was on the plane with him as he was flying to Los Angeles. They also brought in a banker from Los Angeles who testified, yes, the defendant and his wife came in and applied for a loan. And they brought in a handwriting analysis, said, yes, that was the defendant's. But in that case, the Eighth Circuit found that without that instruction, that instruction is so critical with eyewitness testimony because the eyewitness testimony in that case was the judge's court reporter. 1979 was that case, United States v. Green. And since then, there has been no case law from this circuit regarding instruction. Do you know why that is? Wait, wait, wait. We have a couple of cases where we did affirm without. The Mays case, it's in your opponent's brief. The Mays case, yes. Yeah, it's 87. 1987. Right. And in that case. So there have been cases since then. Go ahead. Well, I think that's the last one, Your Honor. That's the last one I could find. You just said there wasn't anything after 1979. Go ahead. Okay, I'm getting In Mays, it was a decision that was the defendant was charged with bank robbery. I'm going into my rebuttal time. But in that case, the accomplice with the person with whom he robbed the bank testified against him. So the court found that that was sufficient independent evidence from the eyewitness identification. And there's also a lot of information in there about when he had the money from the bank, the dye exploded in the bag. And it was an opinion written by Judge Wollman. And in that opinion said, compared with the dyed money that the defendant admitted to spending, the testimony of his accomplice who robbed the bank with him, that was sufficient where the eyewitness instruction wasn't necessary. And since that time, in 32 years, we've had no case. Why is that? Because the district courts have got the message loud and clear that when there is an issue regarding an eyewitness identification, you give the instruction. And in this case, we got no instruction. In fact, the court decided on the morning of the second day of trial that no instruction was going to be given, despite not having heard most of the government's brief. What page? You don't know? Okay. We can have the government explain that if you want to reserve your time. It's on page 5 of the government's brief. Quote, at the beginning of the second day of trial, the court indicated it had already heard enough corroboration of the identification in the record. So it did not plan to give the defendant's instruction. So at that time, we had, they was the probation officer who identified, yes, that's the defendant. One was the lady who was in the traffic accident, who nothing or saw nothing about the gun or the marijuana or the throwing or anything like that. The third one was the officer that found the marijuana, and the fourth witness was the cop that did the show-up identification. They had heard, there had been no evidence presented regarding the eyewitness identification at that time. Thank you. All right, thank you for your argument. Liz Williams, we'll hear from you. Thank you, Your Honors. Lisa Williams here on behalf of the Northern District of Iowa. I too am going to start with the jury. No, on behalf of the United States, not on behalf of the Northern District of Iowa. You know, I am here on behalf of the Northern District of Iowa. Figuratively, Judge Reed is here with us. So with the jury instruction issue, I think the great news is that the parties agree on a lot of things. We agree that the standard of review is abuse of discretion, which is not something that we agree on on all the issues in the case, but we agree on the standard of review, and we agree about the basic framework and legal analysis that the court is to apply to the issue. And really, it rests on the Koehn decision, and I don't mean to nitpick, but in addition to Mays, Koehn was decided after Green, and Koehn also, in fact, cites Green in its holding. So we do have two post-Green decisions. But what Koehn kind of lays out for us on this jury instruction issue is, if there's a, if the eyewitness identification presents a serious question, then the tell-fair instruction is permissible to give. The court doesn't abuse its discretion in deciding to give that instruction, but it can also not give the instruction. That's when it's a serious question. When the ID is the only evidence, when it's the sole evidence in the government's case, that is when the court abuses its discretion by failing to give the tell-fair instruction. Why should that be the rule? If it's a serious question, why shouldn't the judge give the instruction? Why should it be discretionary? I mean, what's so prejudicial? I mean, what's the harm to the government of this instruction? Do you view this as a pro-defense instruction in some way, or isn't it just a neutral instruction about how to assess eyewitness testimony? Well, one of the issues that the government took with the proposed instruction in this case was it seemed to suggest that you must find that the eyewitness identified the defendant beyond a reasonable doubt, and that's not the law. Obviously, the jury doesn't have to find that the eyewitness identification was correct beyond a reasonable doubt, and so the language of it somehow burden-shifted the issue of the eyewitness identification into an element of the offense, and that's what the government took issue with, is we have no burden to prove that Mr. Summers correctly identified the defendant. The jury's allowed to weigh that evidence and Mr. Summers' credibility, just like it would weigh any other evidence presented in the case and consider in the totality, and so... You think there's a problem with the model instruction, or at least the model is designed for a case where the only evidence is the eyewitness? Correct, and that's why that language, because if the eyewitness is the only evidence, then absolutely the jury has to find that that eyewitness identification is correct beyond a reasonable doubt. Do you think we should have a different model instruction that can be used when, as you put it, there's a serious question about eyewitnesses? I think that... That doesn't include that reasonable doubt portion? I mean, I think that the court... Do you harm in that? I think the court could certainly entertain that. I know that the defense makes several... Raises several issues about cross-racial identification in his brief and the dangers with that, and that has been well flushed out by ABA research and the Supreme Court decisions, and that there certainly could be a model crafted to address those issues, but that's not this case, and I don't sit on the 8th Circuit Jury Instruction Committee. Yes, but what Supreme Court case are you talking about? Perry. Are you talking about the concurrence in Perry or the main opinion in Perry? I read... I believe it was Justice Ginsburg's main... She wrote the main opinion, and I believe that she addressed some of that in Perry, and I could be... Well, what do you mean when you say it's not this case? I mean, if we were to say the court should have given the eyewitness instruction without the reasonable doubt paragraph, that is this case. Well, so there is no... If we're going to impose a burden on the court to give a model instruction that doesn't exist, then I don't think the standard is abuse of discretion. Then we have to go under a plain error analysis, because how would the court know to give an instruction that it didn't have the option to give, and whether or not the court... Well, I had the... I don't know what you mean by had the option. It's not required to follow the model instructions. It could have modified the model to fit the case. It could have, and the defense attorney could have asked for that, and they didn't, and I would argue that because the defense had a chance to submit that and ask for that, they've waived the issue, and then the court would analyze it. But they might have forfeited it. Or forfeit, and then under... And I would cite the Tillman case from the Eighth Circuit, that when the defense forfeits a jury instruction, it's unreviewable on the appeal. It's unreviewable. There's no plain error review for... No, Your Honor. Why not? Because it's a forfeiture issue. But forfeiture typically triggers plain error review. Well... Under Rule 52B and U.S. v. Olano and so forth. I would just direct the court's attention. It's April Tillman. It's a case from the Northern District of Iowa. I was the trial attorney and the appellate attorney, and the court gave an incorrect jury instruction that was requested by the defense specifically, and because the defense had requested that instruction, they were not allowed to object to it on appeal. Well, that's different. That's an invited error situation, where if you ask for something and get what you asked for, you can't appeal it. But if you just fail to ask for something, that's a forfeiture, and we typically conduct plain error review. Okay. So that might be applicable here if you're saying they didn't ask for the instruction without the reasonable doubt portion that you objected to. At all times, they asked for the Eighth Circuit instruction, right? That's my understanding. That's very clear, by the way. Yes, Your Honor. So I would like to talk about Greene a little bit, because Greene is really distinguishable, and it was a pleasure reading Greene to be reminded about how we all traveled in 1979. TWA was still around, and it's important to talk about Greene and why it's distinguishable, because the court in Greene didn't vacate every single conviction. The court in Greene only vacated count one and count three, and those counts specifically charged that the defendant was on flight 254 on TWA Airlines, and the only evidence that the defendant was on that specific flight was the court reporter's identification of him when she was on that same flight with him. And the opinion makes note about the specific way that the government charged that. It wasn't, did this defendant go to California? It was, was he was on this specific flight? The count that was upheld in Greene is, in fact, the count that he was in California, and all of that other circumstantial evidence that Mr. Sheets talked about in Greene, that never applied to counts one and three, because of how counts one and three were structured. The fact that he was in California and met with the loan officer, and his credit card was used, I think, for dinner, maybe hotel purchase, a rental car, none of that evidence spoke to whether or not he took that specific flight number to California, and that's the issue that the Greene court had. And it said that the eyewitness identification really was the only singular piece of evidence in Greene, and because of that, the failure to give the instruction was reversible, but just on count one and count three. The court did not vacate the conviction on count two, and allowed that conviction to stand even in the absence of the eyewitness instruction. And that's why it's really important to distinguish this issue, is because the eyewitness identification has to be the sole evidence in order for the court to abuse its discretion, and that is not this case. I can tell that your honors are very familiar with the facts, based on the questions that you asked the defense counsel, but as you So my recollection is that Clark testified that it looked like the gun he showed him. The gun is a Taurus 45 handgun, which is an extremely common gun, so how do we know that he didn't get another Taurus 45? I'm just going by your brief. It says Clark identified the firearm found in the firearm the defendant had once pulled out, shown to Clark, and tried to sell Clark. Is that in August or September? Is that what he's talking about? That's correct, your honor, yes. That couldn't have happened, though, because... That's correct. Oh. So... Does that testimony count for anything? Oh, I think it does. I mean, that that issue, or that point, is not something that we discovered in this the trial, and certainly... You've got it in here as though it's corroborating evidence that takes this out of the green scenario. Well, I think it's corroborating evidence that the defendant possesses firearms, and I think that his prior possession and subsequent possession of firearms on different occasions is relevant evidence to his possession of a firearm during the gun. That's very strong evidence in the government's mind. Cedar Rapids is not a booming metropolis, but it is also not a small city, and it seems wildly circumstantial for his cousin's gun to end up on the side of the road next to where he has this accident, unless he chose to go out and throw it into the in the area of the accident. When it was located, the canine officer, Officer Summer Schumann, testified that it was free of debris and dirt except for where the dog had put his nose and paws, so it's clean. It hadn't been there for a long time. She also testified that the grass around where the firearm was located looked like it had been recently disturbed, that it was green underneath, and that if the gun had been there for a while, she would have expected to see more dead grass. Deborah Shaw, the girlfriend's mother, gave very compelling testimony that the defendant came to her. She observed that he had been beat up and assaulted. He gave her hospital discharge papers about the assault, and he said that he was assaulted over a business debt, and that he owed people money, and he needed money immediately from her to pay this debt. And that's strong, circumstantial evidence of his involvement in dealing drugs, and then why he would subsequently need to possess a firearm to protect himself. When the government shut down last year and we skipped paychecks, I owed my mortgage company money. I have U.S. Bank for my credit card, and none of those companies ever came and threatened me with assaults if I didn't pay my debts. And that's because the legitimate businesses don't go out and assault people who owe them money. But drug dealers do, and people involved in illegal activity, that's how they collect their debts. And so that's strong evidence. The jail call, also, we haven't really talked about the jail call a lot, and not in a lot in the government's brief, but that is strong, circumstantial evidence. Also, he calls his girlfriend and says, no way this ID is going to shake out because I had my hat on when I was at the side of the road, and I took my hat out and threw it in, and so he's never going to be able to identify me. Those aren't the words of an innocent person. Those are the words of someone who knows that they are guilty, are consciousness of guilt words, and who are telling their girlfriend, don't worry, I got this. I'm going to get out from Your Honor, it was correct that there was also Ivan Clark put him at the cousin's house in the basement. That was Mr. Clark, in addition to testifying about buying marijuana from him. I thought the cousin said anytime he was in the basement, he was in the basement with him, though, too. Was there that testimony? I do think the cousin said that. Was there a conflict in the testimony then? No. Did the jury resolve the conflict? I don't think, well. Listen to all my questions. It's a compound question. It is definitely a compound question. Multiple compounds. I didn't read a conflict in Ivan Clark's testimony, putting him at the house, because I don't think Ivan Clark said he was, it was just the two of us there alone, but if there was a conflict, then yes, certainly the jury did resolve it, and I want to spend a moment on that, too, because this defendant testified at trial. Yes. This defendant put his version out of what happened, and it is so incredible, and the jury clearly disputed it, and I'm going to not get to everything I want to say, but one of the things we talked about. Any other big facts, though? Well, how incredible his testimony was. I counted last night, when Mr. Varvachek did his cross-examination, this defendant responded approximately 44 times, I don't know, or I don't remember, to things like, didn't you text with Deborah Shaw about your debt and getting a job? I don't know, and he showed him the text messages, and he goes, I don't know. Well, didn't you ask her for ten thousand three hundred dollars? I don't know, and then Mr. Varvachek showed him the check with his signature on it, and he goes, I don't know, and so this, the incredibility of his testimony, the jury had a chance to hear this story, and the rest of the evidence, and they made the decision. Seeing as I'm out of time, I appreciate the opportunity to argue. Thank you. Thank you for your time. Mr. Sheets, we'll hear from you in rebuttal. Thank you. First of all, regarding the Cain case from 1980, so we're going back 39 years, in Cain... Well, go ahead on Cain, I want to ask you something about it. In Cain, the corroborating evidence in that case, other than... Well, first of all, we have two witnesses, not just one, but two, who saw this defendant commit arson, and then we have a jailhouse admission by the defendant, and so the government presented that cooperating witness. So the court found, and also it's important to note, quote, as far as this case is concerned, the trial judge should have given the defendant's requested instruction. But in this case, with that strong corroborating evidence that existed, the court found that there was no error. That was the last case, and so you compare, we have admissions from the defendant in Cain, we have two eyewitnesses that saw him set the fire, so that's really, since 1987, I think, was the last case. I think that... What about this concern that the instruction the trial counsel requested didn't fit if the eyewitness ID was not the sole evidence, because it has that language about how you have to believe the eyewitness beyond a reasonable doubt to convict. Is it a valid point that trial counsel maybe should have amended the model to fit the case a little better? Yeah, if you look at the model, I think it's in the addendum, isn't it? The model instruction 4.08. If you look at the last paragraph at the bottom of the page there, it seems to say the government has the burden of proving identity beyond the reasonable doubt. No, but if you go on, it says you, the jury, must find, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant. I don't know if that refers specifically to the ID of the witness. It's in context. It could be read that way. The model instruction says, quote, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the document, or of the defendant, before you may find him guilty. So that's in the model instruction. Yeah, does that refer, does that mean you have to be satisfied beyond a reasonable doubt that the eyewitness was correct? I don't know what the uniform instruction goes to, but it's from my reading, from the proposed instruction to the uniform, it's, I think, verbatim. I know that. I know that. That wasn't really the issue. I'm not understanding. All right, well, we'll work through it. We'll work through it. Did you have anything else? Yes, Your Honor. All right, well, your time has expired, but we'll give you one more thought. Thank you. Government Exhibit 16 is this alleged admission telephone call. I would, I've listened to that call. What the government says in its brief isn't true in terms of their characterization of the telephone call. It's the defendant telling his girlfriend, that guy is a liar, that guy meaning the passerby, when he identifies me. I had my hat on for 30 to 45 minutes, and then I took it off because I was sweating, and then he shows up and identifies me with no hat on. How can that be? He's lying. And so let's look at that argument. So for this to be incriminating evidence, this defendant would have had to know that this passerby called the police and said, I saw a guy with a hat on who threw the gun. Somehow Mr. Hurd would have found that out at the scene, taken his hat off, and tried to hide it. That's ridiculous. Okay, well, we'll look for that in the record and evaluate it. Thank you for your argument. Thank you. The case is submitted and the court will file an opinion in due course. That concludes the argument calendar for this morning. The court will be in recess until further call of the docket.